Appellate. Ms. Wright for the Appellate and Ms. Bates for the Appellate. Mr. Barber is seeking a variety of alternative remedies here, but they all depend on his claim that he is not, and never was, ACCA-eligible. At the time of his plea and his sentencing, ACCA's residual clause appeared to be, but we now know, per Samuel Johnson, was not, a clear, valid basis for finding appellant D.C. assault with a dangerous weapon to be an ACCA-violent felony. He entered a binding plea agreement that I don't think the government really disputes, was driven entirely by the mutual understanding that he was ACCA-eligible and a desire to avoid that 15-year minimum sentence. In fact, there was no valid basis for such a status, including under ACCA's force clause, for two independent reasons D.C. ADW does not have, quote, as an element the use of physical force against the person of another. First addressing our mens rea, reckless mens rea, argument. Because as the government acknowledges, D.C. ADW can be committed by employing a weapon recklessly, that is, with indifference to its effect on others, it does not have as an element the use of physical force against the person of another. After Lee et al., where the Supreme Court held this language requires more than negligent conduct, the circuits uniformly concluded that recklessness was not enough for a violent felony. Some courts have recently revised this position based on the Supreme Court's decision of Wazin, but Wazin is really irrelevant to the ACCA-violent felony question in this case. Wazin considered very different language in a very different context and held only that those with convictions for misdemeanor crimes and domestic violence from possessing guns. Can I ask you, when you say it's very different language, it's the same language except for the end of the clause that's at issue in this case, right? Yeah, yes, but it's an important ending, we would say. Yeah, and if we could just focus on that for a second. So I don't dispute the notion that the additional language could be germane, and the question in my mind at least is whether, given the way Wazin analyzed the issue, that addition of the language does make a difference. And for example, in Wazin, the court says repeatedly that it's construing the language at issue in that case by reference to the harm that would be caused to the victim. For example, it says, the harm such conduct causes is the result of a deliberate decision to endanger another. And there's language like that throughout the opinion that focuses on the harm to the victim. And in light of that language, I guess I'm wondering whether the additional language that you're pointing to in this statute would have made a difference given the way the court in Wazin analyzed the issue. By just focusing on the fact that someone was put in harm's way? And that it's a substantial risk of harm to that person. Because it looked like the way the court analyzed the question in Wazin assumed that the relevant  And that's seen. If one were to construe Wazin that way, it seems like that same analysis would apply even though the additional language exists in this statute. Well, I guess I think a substantial risk of harm to a victim is different than that the against language actually does add in sort of more of an intentional element. I think in Wazin, they said that the defendant, it was not, quote, indifferent with respect to the defendant was not indifferent with respect to the harmful consequences of his volitional conduct. So it's that indifference to the harmful consequences. And when you're trying to do something against someone, you do care about the consequences. But I guess even under your argument, I would assume that the addition of the language against the person would get to recklessness. So in other words, the floor would get to recklessness. Sorry, that would get to recklessness. So the floor would be recklessness with respect to the harm to the other person against whom the force was exerted. Right. So that's and it's not you don't have to intend that the harm occurred against the other person. You have to be reckless with respect to the harm to the other person. With respect to me sounds different than against though. And how what's the difference there? Because I'm not following that distinction. Well, I think against suggests that you actually care about the consequences and in when you're just putting someone at risk, but you don't care whether they get hurt or not. But how? But if we're talking about recklessness, aren't we just where it's the degree of care that accompanies the standard of recklessness, which means a substantial risk. Do you think that that more is required under the statute that we have here? Yes. Because you have to have a substantial risk. But you don't care about the consequences in Wasim. And here you do have to care about the consequences to make it a violent felony. Are they are both of those formulations conceptions of recklessness, just that one's extra recklessness or something? I feel like I'm missing. I think that use if use requires recklessness, but then you have to be reckless against someone. I think that means, yeah, I guess I don't know if that is part of the recklessness inquiry or if that's recklessness plus. I'm not sure. Well, it seems like, at least in my mind, and please tell me if I'm missing something, it seems like a lot turns on that because if Wasim already presumed recklessness with respect to the victim, which the particular snippet that I read in some other language in the opinion seems to attach that assumption to the language at issue there, then the question would be whether the additional language in this statute really changes anything. Because we're still in the land of recklessness with respect to the victim, recklessness against the victim. I don't know that I see a distinction between those. Well, I guess I would say when you're throwing a plate against the wall and there are people nearby, you are reckless as to those people, but you are truly indifferent as to what happens to them. And when it says for a violent felony, you have to use force against someone, I think that when you're recklessly throwing a plate, you have to actually be trying to harm that person, to be using it against that person. So your view is that the hypothetical in Wasim where a plate is flung near somebody and the shards break off, that that wouldn't be enough under this statute? If they did not have some level of intent of harming that person, no. Including substantial risk of harm. That wouldn't... That doesn't rise to the level of intent that's required, I wouldn't say. Just doing something that you know is possibly going to hurt someone is not going to be sufficient to be intent to hurt them. So you think this one requires intent, that recklessness is not enough? Yeah, I can't think of anything between recklessness and intent, but certainly more than recklessness. But yes, I would think you would need to intend harm and not just be taking actions that you know present a substantial risk of harm. Because we're talking here about a crime that's going to label you an armed criminal and we're defining violent felonies, so the context also matters. And we know that the Supreme Court views these two statutes as having very different purposes and is perfectly willing to define the same identical language. Here the language isn't identical, but even the identical language has been defined very differently in Castleman and Johnson due to the different purposes. And when you're... You have to look, the context matters of what term you're defining and what the purpose of that definition is. Maybe I misunderstood the other... The decisions that you rely on, I don't know that I read those to contemplate that this statute would require intent. I thought what they contemplated, like the Harper decision, for example, from the Sixth Circuit, I thought what they contemplated was recklessness, but against the other person. Do you read those to require intent? I thought they were saying that recklessness against another person means more than just recklessness. I mean, it means that your state of mind is negligent, reckless, intentional. I thought they were saying it's not enough, you've got to go bump it up because it's against a person. That's what my understanding was. And I would say voisine makes perfect sense in the context it's decided in because it's perfectly understandable that Congress would want to keep those who injure their family members by, for example, recklessly hurling plates near them from bringing guns into that sort of volatile domestic mix. But... So your emphasis on distinguishing voisine as the against another... That is one, but the context also... When I read voisine, it doesn't appear that the court would put any weight on that because it effectively treats the statute in voisine, which didn't use the against another language, as if it did. So the very first paragraph, the second sentence in which the court explains what the opinion is about, it says, that phrase, this is misdemeanor crime of domestic violence, that phrase is defined to include any misdemeanor committed against a domestic relation that necessarily involves the use of physical force. So the court is assuming that the point of the language is it has to be against a person. And similarly, when the court's discussing leocal, which is a different statute than the one we have in front of us, but also uses against a person, the court says, in that decision... The voisine court says, in that decision, this court addressed a statutory definition similar to here. There, quote, the use of physical force against a person or property of another. And then it says, for example, the court stated one would not ordinarily say a person uses physical force against another by stumbling and falling into him. That reasoning fully accords with our analysis here. So I know that you're putting emphasis on the against language, but it doesn't seem like the absence of that language made any difference between leocal and voisine. It's a different language, but it doesn't seem to have any role. Well, I thought the court in voisine went out of its way to say that the only term we're defining is use, and everyone agrees that's the only word. And then they had a footnote where they said, we are not... Yeah, of course, they're only using the word use because there isn't against another person in there. But there was a victim, but you can have a... But what I'm saying is they are assuming that the language means use against another person. They say it twice. And so I'm not sure how we can give particular extra import to it. Well, I think there may be a difference between saying there's a victim and, in fact... There's a difference between saying there's a victim and the force, in fact, was against them and saying that the person intended that. It's the mental state we're talking about here. That's the question we have to answer, if intention is required or not. Right. You said that the context is different here. One of the things the court was worried about in voisine was that there were a lot of statutes that would otherwise go down. Yes. Because the model penal code had interpreted intent to include recklessness for assaults. Isn't that also true here that there are lots of things that would be considered violent like, quote, assault with a deadly weapon that won't be? And so a lot of statutes that Congress was expecting would be included for armed career criminals wouldn't be included anymore. Well, in voisine, including recklessness, excluding recklessness, excuse me, would have actually made the whole statute broadly inoperable in, like, 35 states. Here, there's no issue that this ACCA statute isn't going to apply to plenty and plenty of statutes. It's really the fact that the categorical approach does end up excluding. Congress has it within its authority to get rid of the categorical approach if it wants to. So that's really more what's happening with your Honor, I think, is referring to that violent conduct is being eliminated via the categorical approach. But it's not as if there aren't plenty of statutes remaining, and that was not true. And Congress was legislating in the voisine statute, the MCDB context, against this background where it was clear they wanted to keep these people that had committed these misdemeanor batteries under state law from having guns. And if you didn't put recklessness in there, that wasn't going to happen except in, like, 15 states. So it was just clearly inconsistent with Congress's purpose. It's not the case here. Here, you might say, well, Congress wishes there were a few more included or whatever, but that's, under the categorical approach, that's where we are, if recklessness isn't enough. Well, again, recklessness is the question we have to decide. The categorical approach has already been decided for us, but recklessness is not yet decided. I think that when you're using, when you're defining, it's also the difference between a misdemeanor and a felony. You have to look at what you're defining here. When you're defining a misdemeanor, it makes perfect sense that a misdemeanor can be committed recklessly. But a felony, and especially a violent felony, you think of intentional conduct, and you're labeling the person an armed career criminal. And I wanted to quote from Castleman, where the Court said, We have hesitated, as in Johnson, to apply ACCA to crimes which, though dangerous, are not typically committed by those whom one normally labels armed career criminals. And we would say that reckless drivers and reckless plate throwers are simply not the offenders one would normally label as armed career criminals. And just as in Johnson, it's a comical misfit. For the same reason the Supreme Court has required violent force under ACCA and only common law force for an MCDV, Wazin, we say, has no authority for applying ACCA to those who have employed force with mere recklessness. We've also argued that the violent force element is not met here. And our argument is simple. One, common law force is not ACCA violent force. That's what Johnson says. Poisoning involves common law force. That's what Castleman says. And because DCADW criminalizes poisoning, it sweeps more broadly than the ACCA force clause. What Castleman holds is simply that you can't have bodily injury without common law force. And it gave poisoning and infecting with a disease as examples of common law force. But Mr. Barber submits that you can have bodily injury without violent force. I don't think Castleman decided whether poisoning is only common law force or violent force. All it had to conclude was that common law force was sufficient. It didn't have to resolve the question of whether the violence done to body cellular structures indirectly by the sprinkling of poison was sufficient or not. Do you think it decided that question? Well, I think in its citation to Lefebvre where it's citing that these things are common law batteries, I think I interpreted it as they were saying this is the kind of term of art force, and term of art force, you know, is enough. Because really in Johnson the court talked about there's force that we talk about, violent force, and then there's this sort of term of art that the law, the common law, came up with. And I thought Lefebvre was saying these common law batteries with laser beams and things like that, those are term of art force. And that's what I think an interpretation of Castleman is. That wasn't our interpretation of Castleman, and I think Reddick, where we said it, has also said in Castleman that if you say that all that's required is common law force, then shooting somebody with a gun is not violent force because the only thing you directly apply is to the trigger, and that's just a small amount of force. It's the impact of the bullet that makes a difference, and likewise it could be argued that the impact of the poison is what makes the difference, exploding the cells that are affected by the poison. I just don't think that's decided, that either of those are not a violent crime. They are definitely a common law violent crime, but the question is whether they're a common law crime for purposes of this statute. Well, I mean, our argument is not that the direct and indirect argument at all. We're just saying it's not a sufficient degree. It's just not violent enough, and it just lacks, you know, the degree of power. And I would say in support of that, that, for example, in Castleman, the Court suggests that there's a substantial gap between mere offensive touching and violent force when it lists acts of domestic violence that it says, quote, one might not characterize as violent in a non-domestic context. And Castleman included pushing, shoving, grabbing, pinching, hair-pulling, slapping, hitting, and biting. And if these forceful acts, which are all capable of causing pain and injury, obviously, are what the Castleman Court referred to as minor uses of force that, quote, may not constitute violence in the generic sense, then we would say certainly the minimal force exerted by poison does not rise to that level. That's our argument. Are there questions from the panel? I can't save a little time. Yeah. I mean, I'm happy to talk about our remedies, but if the Court is satisfied. Does anybody have a question? Thank you. May it please the Court. Lauren Bates on behalf of Appellee United States. A DCADW, which requires the use of a dangerous weapon, that is a weapon that is capable of resulting in death or serious bodily injury by the use made of it, categorically requires as an element the use, attempted use, or threatened use of physical force, and that is violent force as defined by the Supreme Court in Johnson. The fact that an ADW may be committed recklessly, that is with the deliberate decision. I thought maybe you're underplaying your argument, but I thought in Powell the Court said a deadly or dangerous weapon is an object which is likely to produce death or great bodily injury by the use made of it, not if it's capable of it. That is the correct formulation of the element. I apologize. It is likely. So one who uses a weapon that is likely to result in that degree of injury, whether they use it intentionally, purposefully or knowingly, or recklessly, deliberately making the decision to use a weapon that is likely to result in that degree of injury, without care as to the fact that it may or may not, that individual uses force against the person of another. So can I ask you this question? So in the Supreme Court's decision in Begay, in discussing ACCA, it says that ACCA is concerned with the following kind of conduct. The offender is the kind of person who might deliberately point the gun and pull the trigger, as distinguished from a situation in which the offense just, quote, reveals a risk of callousness towards the risk. And the latter formulation kind of sounds like recklessness. And so it seemed like what the Court was indicating in Begay, and yeah, it was before Voisin, so of course it's an earlier decision, but that language sort of maps on to a distinction between intentionality on one hand and recklessness on the other? I think it's possible. I think first I would say Begay was not saying under any circumstance that that was Congress's only concern in enacting ACCA, and the legislative history, as this Court detailed in its Mathis decision, suggests Congress was clearly trying to encompass crimes such as the list is murder, rape, assault, and robbery. Two of those, second-degree murder and assault, whether with a dangerous weapon or the aggravated formulation, under the Model Penal Code and many jurisdictions, including the District of Columbia, are crimes that include and encompass reckless conduct. But beyond that, I think that if an individual, even if it's three prior convictions that display a, that are on the reckless formulation, where an individual has on three previous occasions engaged in the use of violent physical force deliberately, but without care to the injury that results to a person, that individual still is, fits within Begay's kind of formulation, is a person who might deliberately pull the trigger. But doesn't it also seem like a person who has a degree of callousness towards risk? It seems like it describes that person to a T based on the conduct. So callousness towards risk, I think you could argue, put in the category of negligence. Obviously they're not using in Begay the kind of mens rea formulations here, a person who just isn't aware and doesn't care to assess the risk. But when it's a deliberate decision, so that's a conscious understanding of risk and the choice to engage in the conduct nonetheless, I think that that is someone who might deliberately pull the trigger. You know, whether or not it's going to hit the person who they're aiming at or towards or the crowd that they're firing into, that is precisely the type of individual that Congress. I would have thought that what you would say about Begay is that the court three times described DUI as a strict liability crime. Not even a negligence crime, but a strict liability crime. Yes, and I think Begay is not obviously grappling with this difference between recklessness and a higher mens rea purpose or knowledge, but is excluding the individual who just engages in conduct without an awareness or understanding, whether that's strict liability or negligence. I do not think that that quote by any means resolves the question here today, which is, is a person who engages in conduct that is likely to produce a substantial risk of death or bodily injury by using what qualifies as a dangerous or deadly weapon, is that person using force against the person of another? And does that individual fall within the ambit of offenders that Congress meant to include in the Armed Career Criminal Act? I think the answer is yes, based not only on the language as the panel has pointed to in Faucine, which is all of the discussion of what it means to use force includes within it this concept that the force is being used against another person that's required for a misdemeanor crime of domestic violence. It has to have a victim. It's not the use of force in the abstract. And there's no reason why Faucine's analysis should not apply to the very similarly worded elements clause definition in the Armed Career Criminal Act. What do you make of the footnote where they reserve the question though and said, obviously implicitly, that there could be such a distinction? I think it's just the Supreme Court recognizing that the question, that specific question wasn't teed up and presented to it. But as other courts are supposed to do and free to do, its analysis may shed light on what the answer to that question is and would be when it was presented to the court. And I think that reading Faucine's analysis, together with looking at the language that Congress used, there is no evidence by the fact that Congress in one statute requires a victim in one way, and in another includes the phrase against the person of another, that Congress was attaching any additional or heightened mens rea requirement to that. You mentioned Mathis. What lesson do you take from the Court's review of legislative history in Mathis? In amending the Armed Career Criminal Act and adopting the elements clause, Congress intended to broaden the scope of offenses that would qualify as ACCA predicates to encompass what were traditionally thought of as violent crimes, and the list would include murder and assault offenses, which at the time the model penal code had been enacted two decades earlier, were commonly thought of as offenses that could be committed with a mens rea of recklessness. So I read part of Mathis as saying that the reason that Congress put in the words against the person were to distinguish it from property crimes, against property. So like burglary or arson or extortion or something which affected property. And I think that that is a reason, one reason, yes, why that language would be there, and that's been picked up and recognized by a couple of courts that have been dealing with this recklessness question, that really the against the person is just speaking to the category of offenses that fall under the elements clause. It's not requiring any heightened degree of mens rea. It's saying the elements clause here is, as defined for the Armed Career Criminal Act, applies to the category of offenses that have people as victims, just like misdemeanor crime of domestic violence applies to the category of offenses. So if you recklessly exploded a bomb on a sidewalk without aiming at a particular person, that would be against a person. But if you recklessly exploded it against the side of a building, that would not be a violent crime because it was against property. I think it depends on whether it's the crime that's charged, obviously, and what's required as the elements of the crime. If the elements of the crime did not require a risk of injury to a person, it wouldn't qualify under the elements clause. But exploding a bomb on the sidewalk, if it is reckless as to the fact that you have a conscious disregard of the fact that there are people who are walking around that sidewalk, that your bomb is the type of bomb that would have a force large enough that would likely injure those individuals, and you do it without the specific intent to injure a specific individual, but with an awareness of that risk, yes, that would be the type of crime that would qualify under the elements clause. And as to a building, unless you are certain that no one was in there. Correct. And that would, I think, this distinction between whether you're certain no one's in there or reckless as to the fact that during the day most office buildings are occupied by people would be solved by what crime, what predicate offense, you're looking at for purposes of applying the ACCA enhancement, whether the offense is one that requires, like ADW does, that it be committed against a person. What do you think about the notion that because there's been a lot of courts who have weighed in on this and had persuasion in which the rule of lenity might come into play? I don't think that we're at a point where the rule of lenity comes into play, and I disagree with the First Circuit's conclusion there, that there is simply looking at the language, nothing that suggests that Congress would have meant to include a heightened mens rea. They didn't use words. They didn't say the use of force intentionally directed at the person of another. They were legislating against the backdrop where they wanted and there was history that showed the intent to include crimes like murder. Again, this would exclude second-degree murder from being a crime of violence for purposes of the Armed Career Criminal Act. And looking at the intent, looking at the words used, and looking at what is required as the Supreme Court defined in Boissin to use force, I think that it is not one where there's a grievous ambiguity, and to exclude reckless offenses would lead to an absurd result, would lead to the comical misfit that the Supreme Court has counseled against because it would exclude offenses like second-degree murder, like aggravated assault or assaults with a deadly or dangerous weapon. And if the Court has, I know I'm short on time, questions about the force piece, I'm happy to address that as well. Thank you. We ask that the judgment below be affirmed. Ms. Wright, you don't have more time, but please come up and take a couple more minutes. Two points. The Court in Johnson said context determines meaning, and we would say that having three reckless driving ADWs is a comical misfit as saying that person is a likely trigger puller, which is what Congress is concerned about, and about Your Honor's concern about knocking out a bunch of statutes. I forgot to say that, of course, the interpretation that the D.C. Court has put on D.C. ADW is very, very broad and not in any way necessarily the same definition in other jurisdictions. The idea that you can have a car accident in D.C. and be convicted of D.C. ADW I would think is, you know, that's. . . Do you think it's different? Do you think the kind of extreme recklessness that counts as a felony, do you think that that is not a felony in other states? No, I don't know. I don't think the government's shown that it is. I think it strikes me as unusual that you can commit an assault with a dangerous weapon by reckless driving. I think the D.C. case is unusual, and we shouldn't assume that other statutes like that would be excluded. What do you think about this argument, or at least the implication, suggestion in Mathis that the reason they stuck in the against persons was just to distinguish it from property crimes like burglary, et cetera? Yeah, I'm afraid I have not thought about that. I'm aware of what you're talking about, and I'm not sure I have a great answer on that. Can I just ask one follow-up question on that language? Because the addition of that language is the existence of that language is key to your case, and I just want to reformulate a thought I had earlier. Yes, of course you must think that the language requires intentionality, and I guess my question is, based on the analysis in Voisin, why would we think that the existence of that language would kick it up, given that the language in Voisin repeatedly talks about a substantial risk of harm to another person? And I just want to make sure I understand your argument, because I just want to make sure I'm not missing something. I guess I'm saying that when you commit an act volitionally and you know that you're creating a substantial risk of harm to someone, that is reckless, but if you're indifferent to whether you do harm that person, that would satisfy a misdemeanor crime of domestic violence. But when you say that you must use the volitional force, and in Harper they talk, there's two different levels of intent involved, the intent to do the act and then whether you care about the consequences, and that adding the phrase against the person of another means that you do care about the consequences, and that's what's required under a violent felony. And we would say that the context of the statute makes that plain because it would just be a comical misfit to hold otherwise. And you care in a way that bumps up a substantial risk that the conduct will cause harm to another, which is what Voisin assumed was the case there. It's not just the risk. It's your intention that that occur. You're not indifferent to whether it occurs. You want it to occur. In the car accident case, the person was not trying to injure the people he injured. He didn't commit a crime against those people. He drove his car without regard to whether he hurt them or not. And I can't imagine that Congress would consider that to be a violent felony given the context that it's labeling the person an armed career criminal with a reckless mens rea. Mens rea is a very low mens rea. I mean, the idea that you commit a violent felony without an intent, I just don't think that makes sense. Thank you. All right, we'll take that case under submission.
judges: Garland, Kavanaugh, Srinivasan